**SOUTH CAROLINA RENTALS, INC.,**
**d/b/a Ace T.V. Rentals, Appellant,**

v.

**Johnny ARTHUR and Angie**
**S. Arthur, Appellees.**

Civ. A. No. 4:93–3251–22.

United States District Court,
D. South Carolina,
Florence Division.

Sept. 28, 1995.

David Randolph Whitt, Rogers, Townsend & Thomas, P.C., Columbia, SC, for South Carolina Rentals, Inc.

Robert Kenneth King, West Columbia, SC, for Johnny Arthur, Angie S. Arthur.

## ORDER

CURRIE, District Judge.

This case is before the court on appeal from the United States Bankruptcy Court. This court has jurisdiction to review the final judgment of the Bankruptcy Court under 28 U.S.C. § 158(a). Appellant, South Carolina Rentals, Inc., d/b/a Ace TV Rentals, argues that the Bankruptcy Court erred in concluding that certain agreements between it and Appellees Johnny and Angie Arthur (collectively, "Debtors") were security agreements and not true leases.

### FACTS AND PROCEDURE BELOW

Between September 1992 and February 1993, Debtors entered into four "Lease–Purchase Agreements" with Appellant. Under the agreements, Debtors took possession of a VCR, refrigerator, stove and television.

Each agreement provides for an initial term of one week, with overall terms ranging from 61 to 91 weeks. Under the agreements, ownership of the property is transferred to Debtors only after payments for each item are made for the full contract term. Until that point, Debtors are free to return the property without further obligation. Alternatively, Debtors could purchase the property at any time by paying a lump sum totaling 55% of the remaining scheduled payments.

■ Debtors filed for Bankruptcy under Chapter 13 of the Bankruptcy Code. During that proceeding the property governed by the agreements was valued at $1,650.00. Debtor's proposed Chapter 13 plan, which characterized the agreements as security interests, secured Appellant's claim in that amount. The Bankruptcy Court approved Debtors' proposed plan despite Appellant's argument that the agreements were not security interests but true leases.[1] Appellant argues that because the agreements are true leases the Bankruptcy Court erred when it approved Debtors' Chapter 13 plan.

## JUDGMENT OF THE BANKRUPTCY COURT

■ The Bankruptcy Court found the facts and legal issues here to be essentially the same as those presented in *In re Barnhill*, No. 92–73768 (Bankr.D.S.C. Jan. 6, 1993). *In re Arthur*, No. 93–72205 (Bankr.

D.S.C. Sept. 17, 1993) at 2 (hereinafter Bankruptcy Order). State law determines whether or not an agreement is a true lease or a disguised security agreement under the Bankruptcy Code. *In re Puckett*, 60 B.R. 223, 233 (Bankr.M.D.Tenn.1986), *aff'd*, 838 F.2d 471 (6th Cir.1988). The intent of the parties governs the determination of whether a putative lease represents a security agreement under South Carolina law. S.C.Code Ann. § 36–1–201(37) (Law.Co-op.1976).[2] *Barnhill* held that under section 36–1–201(37) of the South Carolina Uniform Commercial Code, "[t]he parties' characterization of the agreement is not controlling, the court should instead apply an objective standard to the facts of each case to determine 'the true relationships and economic realities created by the agreement.'" *Id.* at 3–4 (quoting *Compliance Marine, Inc. v. Campbell, (In re Merritt Dredging Co.)*, 839 F.2d 203, 209 (4th Cir.1988), *cert. denied*, 487 U.S. 1236, 108 S.Ct. 2904, 101 L.Ed.2d 936 (1988)).

The Bankruptcy Court then applied the *Barnhill* "economic realities" test and found that all the relationships and economic considerations present in *Barnhill* were present here. *Bankruptcy Order* at 2–4. It also noted that the agreements were in "conformity with the disclosure requirements for consumer rental-purchase agreements as set forth in S.C.Code Ann. § 37–2–701 *et seq.* (1976)."[3] *Id.* at 1. In *Barnhill*, the putative

---

1. If the agreements are true leases, they are subject to the provisions of section 365 of the Bankruptcy Code. 11 U.S.C. § 365. Under that provision, the agreements would be executory contracts and Debtors would have to accept them and propose a cure or reject them and surrender the property. If the agreements are characterized as security interests, Debtors may pay the value of the goods through their plan and keep the property. *In re Puckett*, 60 B.R. 223, 233 (Bankr.M.D.Tenn.1986), *aff'd* 838 F.2d 471 (6th Cir.1988).

2. Section 36–1–201(37) states, in pertinent part, that:

"Security Interest" means an interest in personal property or fixtures which secures payment or performance of an obligation.... Unless a lease or consignment is intended as security, reservation of title thereunder is not a security interest.... Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.
S.C.Code Ann. § 36–1–201(37) (Law.Co-op.1976).

3. Section 37–2–701 states, in pertinent part, that:

"Consumer rental-purchase agreement" means an agreement for the use of personal property by an individual primarily for personal, family or household purposes, for an initial period of four months or less (whether or not there is any obligation beyond the initial period) that is automatically renewable with each payment and that permits the consumer to become the owner of the property. The term does not include a consumer credit sale as defined in § 37–2–104, or a consumer loan as defined in § 37–3–104, or a refinancing or consolidation thereof, or a consumer lease as defined in § 37–2–106.

lessor argued that because the agreement in question met the statutory definition of a consumer rental-purchase agreement under the South Carolina Consumer Protection Code, it should be considered a true lease regardless of other aspects of the agreement. *Barnhill* rejected that argument, holding that section 37–1–701 did not displace the definition of a security interest in section 36–1–201(37). *Barnhill* at 8. The Bankruptcy Court refused to reject *Barnhill*.

## APPELLANT'S ARGUMENT

■ Appellant does not contest the factual findings of the Bankruptcy Court and agrees that under the economic realities test the agreements in question were properly characterized as security interests. *See Bankruptcy Order* at 4. Instead, Appellant urges this court to reverse *Barnhill* and adopt a different test.

Appellant contends that *Barnhill*, and therefore the Bankruptcy Court, erred in applying the economic realities test to determine whether the parties intended the agreements to be security interests under section 36–1–201(37). Instead, it asserts that under South Carolina law there can be no security interest without an obligation. Under the terms of the agreements, Debtors are under no obligation to continue making payments. Therefore the agreements as a matter of law are not security agreements but true leases. Appellant also argues that because the agreements meet the definition of consumer rental-purchase agreements, and are therefore by definition not consumer credit sales under the Consumer Protection Code, they cannot be construed as security interests under the Uniform Commercial Code.

## OPINION OF THIS COURT

### A. The Economic Realities Test.

Courts are split on the issue whether or not the absence of an express obligation is determinative in characterizing a putative lease as a true lease or a security interest. Appellant cites cases employing a one-step analysis; if there is no obligation there is no security interest. *See, e.g., In re Mahoney,*

S.C.Code Ann. § 37–2–701(6) (Law.Co-op.1976).

153 B.R. 174, 177 (E.D.Mich.1992) (holding that where there was no obligation to renew there was no obligation to be secured). The United States Court of Appeals for the Fourth Circuit has, however, adopted a different test.

■ *In re Merritt Dredging Co.* clearly states that an "obligation to purchase may be found even where an agreement does not explicitly require the putative lessee to make sufficient payments to allow the exercise of a purchase option with no further consideration." *In re Merritt Dredging Co.,* 839 F.2d at 209. In other words, even if there is no express obligation under the terms of the agreement, those same terms could create a "significant economic compulsion" for the putative lessee to continue making payments. *Id.* In order to discern whether or not that economic compulsion exists the court examined " 'the true relationships and economic realities created by the agreement' to determine the interests conveyed by it." *Id.* (quoting *Sight & Sound of Ohio, Inc. v. Wright,* 36 B.R. 885, 889 (S.D.Ohio 1983)). The decision in *In re Merritt Dredging Co.,* which *Barnhill* rests on, forestalls Appellant's argument.

### B. The South Carolina Consumer Protection Code.

■ The *Barnhill* court declined to hold that a putative lease could not be a security interest because it met the statutory definition of a consumer rental-purchase agreement. That conclusion of law is subject to *de novo* review by this court. *See In re Malloy,* 155 B.R. 940, 944 (E.D.Va.1993), *aff'd,* 23 F.3d 402 (4th Cir.1994). The court in *Barnhill,* when faced with the argument that section 37–2–701 of the South Carolina Consumer Protection Code was intended to displace section 36–1–201(37) of the South Carolina Uniform Commercial Code (the same argument Appellant makes here), found that "[n]either the South Carolina Consumer Protection Code, nor its Legislative History indicates any specific displacement of S.C.Code § 36–1–201(37)." *Barnhill* at 8–9. The South Carolina Consumer Protection Code

was patterned after the federal truth-in-lending laws and was meant to require disclosure in consumer rental-purchase agreements. Thus, "the determination of whether a consumer rental-purchase is a security agreement or a true lease should be made according to the factors set forth in S.C Code Ann. 36–1–201–(37) ... and existing case law." *Id.* at 9. *See also, In re Burton,* 128 B.R. 807, 810–811 (Bankr.N.D.Ala.), *aff'd,* 128 B.R. 820 (N.D.Ala.1989) (holding that similar Alabama Rental–Purchase Agreement Act did not repeal section 1–201(37) of the Alabama Uniform Commercial Code).

Appellant cites case law that appears to contradict the position adopted in *Barnhill* and *Burton.* A closer examination of the specific state statutes involved, however, shows that these cases are inapposite. For example, in *In re Morris,* 150 B.R. 446 (Bankr.E.D.Mo.1992), the court found that Missouri's Rental Purchase Agreement Law precluded a characterization of a putative lease as a security interest under section 1–201(37) of Missouri's Uniform Commercial Code. *Id.* at 449. Missouri's definition of rental-purchase agreement differs from South Carolina's definition of consumer rental-purchase agreement. Specifically, the Missouri definition states that a "rental-purchase agreement shall not be construed to be ... [a] security interest as defined in subdivision (37) of section 400.1–201." Mo.Ann.Stat. § 407.661(6). No such admonition exists in the South Carolina Code.

### CONCLUSION

This court declines the invitation of Appellant to overturn *Barnhill* and affirms the ruling of the Bankruptcy Court that the agreements in question are security interests and its order confirming Debtors' Chapter 13 plan.

SO ORDERED.